UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA, ex rel. | ) | |
|---|---|---|
| KOREY JENNINGS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 05 C 6647 |
| | ) | |
| ALAN M. UCHTMAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Korey Jennings ("Petitioner" or "Jennings") petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging numerous constitutional violations. Respondent Alan Uchtman, Warden of the Menard Correctional Center (the "State") responded, contending that each of Jennings's allegations is either without merit or procedurally defaulted. For the reasons set forth below, we deny the petition.

BACKGROUND

On September 18, 2002 Petitioner Korey Jennings was convicted of first-degree murder and attempted murder for shooting and killing Geraldo Martinez. He was sentenced to concurrent terms of 43 years for murder, and six years for attempted murder. *People v. Jennings*, No. 1-02-3103, slip. op. at 1-2 (1st Dist. May 5, 2004).

At trial, Petitioner and his girlfriend, Devon Franklin, both testified that he was with Franklin at her house the entire night and was not involved in the shooting. Petitioner also claimed that his car, which was used in the murder, had been stolen. *Id.* at 27.

Jorge Martinez Flores testified that he and his cousin, the victim, were waiting to turn left shortly after midnight on September 25, 1999 when a car with three black men pulled up along the passenger side. He heard a shot, and saw that his cousin was slumped and bleeding. He saw the driver, Petitioner, throw a large black item into the backseat and speed off. He chased the car and crashed into it, causing the license plate and fender to fall off. Flores returned to the police station the next evening to view a lineup and immediately identified Petitioner as the shooter. *Id.* at 5-6.

The police used the recovered license plate to track down the owner of the car, Eric Jennings ("Eric"), Petitioner's brother. The police reported that Eric informed them that Petitioner actually owned the car, but they had registered it in his name because of Petitioner's bad driving record. At that time, the detectives did a background check on Petitioner and found that he did indeed have a poor driving record, and had been arrested four previous times in the area where the incident took place. *Id.* at 2-3. At noon on September 25, Petitioner arrived at the police station to inquire about his brother. Detective Darcy asked Petitioner to accompany him to an interview room, and Petitioner agreed. Detective Zaltoris read Petitioner his *Miranda* rights, and Petitioner agreed to speak to them. *Id.* at 4. After 10 minutes, Petitioner corroborated Eric's statements that he owned the car and that they had registered it in his brother's name due to his bad driving record. The officer that wrote Petitioner's arrest report based the time of arrest, September 25, 1999, at 12 p.m., on Detective Darcy's statement that Petitioner came into the station at noon and was read his *Miranda* rights. *Id.* at 4-5.

Petitioner later told detectives that he was the shooter, but that he had acted in self-defense. He said that two Hispanic gang members pulled up next to his car and pointed a gun at him. He took the shotgun that was in his lap for protection from other gangs, shot the victim,

and fled the scene. He said that the victim's car crashed into his car, and that he drove his car to the location where the police found it. *Id.* at 8.

After being told that no firearms were recovered from Flores, the victim, or the victim's car, and that neither one was a gang member, Petitioner changed his story. He admitted that he was driving earlier that night when some Hispanic gang members yelled gang slogans and threw rocks and bottles at his car. Petitioner stated he became angry and retrieved a shotgun from the trunk of his car. He pulled up to the victim's car and saw that it was occupied by two Hispanics. Thinking that they might have been involved with the gang that threw rocks and bottles at them earlier, Petitioner pointed the gun into the car and fired one shot, killing the victim, and fled the scene. *Id.* at 8. After stopping his car to inspect the damage, he realized the license plate had fallen off. He vandalized it so that he could report it stolen. Petitioner never signed this statement. *Id.* at 9.

The detective contacted Flores and asked him to view a lineup at the police station, at which time Flores identified Petitioner as the shooter. *Id.* at 6.

Assistant State's Attorney ("ASA") Butinas testified that he spoke with Petitioner later that evening. Petitioner told him the same story about Hispanic gang members throwing rocks and bottles at him, and yelling gang slogans. Petitioner said he wanted to shoot them for having disrespected him. He retrieved his shotgun and spotted the victim and his cousin. He pulled up close to "get a good shot at them." After the incident he fled, broke out a rear window, tore out the stereo and damaged the steering column of his car to make it look as if it had been stolen. Although Petitioner did not sign this statement, the ASA testified that Jennings said this version of the facts was true and accurate. *Id.* at 9-10.

Petitioner appealed his conviction to the Illinois appellate court, on the following grounds: 1) his Fourth Amendment rights were violated when the police seized, held and interrogated him without probable cause; 2) he was denied due process by an incorrect jury instruction and the denial of self-defense instructions; 3) he was denied his Sixth Amendment right to confrontation; 4) he was denied due process when the State wrongly presented evidence that Petitioner had been arrested previously and was a gang member; 5) he was denied due process when the court failed to instruct the jury on involuntary manslaughter; 6) and he was denied due process when the state failed to provide Petitioner with a lab report showing that fingerprints other than Petitioner's were found on shell casings at the scene of the crime. In his appeal he claimed the trial court erred by refusing to appoint him new counsel, and to conduct a hearing to determine whether his counsel received a police report from August 2000, but the appellate court ruled this claim was procedurally defaulted because it was first raised in Petitioner's reply brief. On May 5, 2004 the appellate court denied Petitioner's claims and affirmed his convictions. *Id.* at 1. The appellate court found that Petitioner was not under arrest at the time he was asked to go into the interview room because he voluntarily went with the detectives, he was not handcuffed, was never mistreated by the police and was never told that he could not leave. *Id.* at 17. The court observed that being read his *Miranda* rights "does not establish an arrest." *Id*. The appellate court also found that any error in refusing to provide a self-defense instruction to the jury was harmless because Petitioner claimed an alibi defense. *Id.* at 27. Finally, the appellate court found that the August 2000 report would not have changed the outcome of the trial, and, since it was not material, did not warrant a new trial. *Id.* at 23.

Petitioner filed a petition for leave to appeal with the Illinois supreme court raising nearly the same arguments. He also argued that the appellate court misapplied precedent by holding

that there was probable cause for his arrest. The Illinois supreme court denied his petition for leave to appeal on November 24, 2004. Jennings did not file a post-conviction petition in the Circuit Court of Cook County. (Answer at 2-3.)

On November 22, 2005, Petitioner filed his petition for federal habeas corpus on four grounds: 1) he was denied due process because the instructions for second degree murder were improper; 2) he was denied due process because other instructions did not include self-defense; 3) the appellate court mistakenly ruled that Petitioner was not detained for the first ten minutes of his visit to the police station; and 4) he was denied due process when the State failed to provide him with a report showing that additional fingerprints were on the shell casings found at the scene of the crime, or alternatively, that defense counsel was ineffective if he received this report and did not use it in the defense.

## ANALYSIS

Before we may consider a petition for a writ of habeas corpus on its merits, Petitioner must 1) exhaust all remedies available in state courts, and 2) fairly present any federal claims in state court first, or risk procedural default. *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996) (citing 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732 (1999). To avoid procedural default, a state prisoner must fully and fairly present his constitutional claims in state court. *See Wilkinson v. Cowan*, 231 F.2d 338, 340 (7th Cir. 1993).

The appellate court ruled that it did not have a fair opportunity to hear part of Petitioner's fourth claim regarding the trial court's error in refusing to appoint him other counsel and to

conduct a full hearing to determine whether defense counsel received the August 2000 report. In Illinois, an appellant cannot raise new issues or arguments in a reply brief. 188 Ill.2d R. 341(e)(7), (g). The court observed that this claim was first asserted in the reply brief and was therefore procedurally defaulted. *People v. Jennings*, No. 1-02-3103, slip. op. at 20 (1st Dist. May 5, 2004). Therefore, this part of his claim was not fairly presented to the state court system and is procedurally defaulted, and will not be examined on the merits.

Under the Antiterrorism and Effective Death Penalty Act, we may grant Jennings's request for habeas relief with respect to any claim decided on the merits by the state court only if the court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519 (2000). A state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]." *Williams*, 529 U.S. at 405.

A state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case" or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id*. at 407. A state court's application of Supreme Court precedent must be more than incorrect or erroneous, it must be "objectively" unreasonable. *Id*. at 410 ("An *unreasonable* application of federal law is different from an *incorrect* application.")

(emphasis in original); *see Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (same). For a state court decision to be considered unreasonable under this standard, it must lie "well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Henderson v. Briley*, 354 F.3d 907, 909 (7th Cir. 2004) (The "question before a federal court on collateral review…is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'").

  A.  *Self-defense Instruction*

Petitioner claims that he was denied due process when the trial court did not include an instruction to the jury explaining under what circumstances unreasonable self-defense applies to reduce the charge to second degree murder. The trial court gave the jury an instruction on second degree murder based on unreasonable self-defense because Jennings's original statement to the police indicated that the occupants of the car pointed a gun at him. Jennings subsequently changed that statement, and said that when he pulled up to the victim's car, the occupants did nothing but look at him. He further testified in court that he was never present and was not involved in the shooting. The court refused to give the instruction that "a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself." Illinois Pattern Jury Instructions, Criminal, No. 24-25 (3d ed. 1992). Jennings claims that without such an instruction, the jury could not understand second degree murder based on unreasonable self-defense. He stresses the importance of the mitigating circumstances that reduce the charge from first degree to second degree murder.

The appellate court stated that refusing to provide the self-defense instruction was error on the trial court's part. However, it also observed that "the court's refusal to tender a jury

instruction will be deemed harmless when the evidence of guilt is clear and convincing and the result of the trial would not have differed if the proper instruction was tendered." *People v. Jennings*, No. 1-02-3103, slip. op. at 27 (citing *People v. Dennis*, 181 Ill.2d 87, 95, 107, 692 N.E.2d 325, 330, 336 (Ill. 1998); *People v. Moore*, 95 Ill.2d 404, 410, 447 N.E.2d 1327, 1330 (Ill. 1983)). The appellate court held that an instruction on self-defense would not have changed the jury's verdict.

We find that the appellate court ruled correctly. A self-defense jury instruction is inappropriate where the evidence does not support a defense of self-defense. *Armstrong v. Bertrand*, 336 F.3d 620, 626 (7th Cir. 2003) (holding that the state court's rejection of the instruction was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, even where the defendant was arguing in favor of the affirmative defense, but lacked evidence). Petitioner did not argue for or introduce any evidence to support the theory of self-defense. Both Petitioner and the only other witness called by the defense testified that Petitioner was not present at the scene of the crime when the shooting occurred. The result of the trial would not have changed if the instruction was given because the jury was deciding between two theories: that Jennings shot the unarmed man after he looked at him, or that Jennings was at his girlfriend's house and was not involved in the shooting. Neither party argued whether or not Jennings had acted in self-defense. Petitioner cites cases suggesting that a second degree murder charge requires an explanation of self-defense, but those cases are distinguishable. (Pet. at 6 (citing *People v. Foster*, 81 Ill.App.3d 915, 923, 401 N.E.2d 1221, 1227 (1st Dist. 1980); *People v. Pegram*, 124 Ill.2d 166, 174, 529 N.E.2d 506, 528 (Ill. 1988)). However, in both cases the defendants admitted to being present during the crimes, and were arguing in favor of the affirmative defenses in question. Whereas here Petitioner did not argue

in favor of the affirmative defense, nor provide any evidence in support of a self-defense theory.

Petitioner's claim is denied.

B.   *Other Instructions*

Second, Petitioner argues that instructions regarding the attempted murder, first degree murder and aggravated discharge of a firearm charges require that the jury be instructed on self-defense. (Pet. at 7-8). Petitioner offered no evidence of mitigating circumstances based on self-defense. Thus, under the same reasoning discussed above in Section A, we believe the trial's outcome would not have been different, and therefore any error would be harmless.

C.   *Illegal Seizure*

Third, Petitioner claims that the appellate court's decision that he was not detained for the first ten minutes in the police station was contrary to, or involved an unreasonable application of, clearly established federal law. Since his seizure was illegal, Petitioner claims the inculpatory statements he made during the detention should be suppressed.

He bases his claim on his Fourth Amendment rights against unreasonable searches and seizures. "Fourth amendment claims are subject to the strictures set out in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037 (1976)." *Cabrera v. Hinsley*, 324 F.3d 527, 530 (7th Cir. 2003). "Where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Hampton v. Wyant*, 296 F.3d 560, 562 (7th Cir. 2002). The Seventh Circuit further clarified that *Stone* would not preclude a federal habeas petition if the state proceeding were in some way a sham, or if the judge were bribed or sleepwalking. *Cabrera*, 324 F.3d at 531. "Federal courts will not examine whether a state judge did quality preparation or had a perfect understanding of the law."

*Id.* Further, "full and fair" only "guarantees the right to present one's case." *Id.* The court in *Cabrera* ruled that the defendant had a full and fair opportunity to litigate his claim because the issues were raised and ruled upon by the Illinois appellate and supreme courts. *Id.* at 532. Similarly, Petitioner's claim was heard by the Illinois appellate court and his petition was denied by the supreme court. There is no indication or allegation that these proceedings were a sham, or that a judge was bribed or sleepwalking during the adjudication. Since none of the exceptions to *Stone* apply, federal habeas relief is precluded.

Petitioner's third claim would fail even if it were not precluded by *Stone* and its progeny. He argues that he was illegally arrested because he was moved from an open area to a private area away from public view, he was not told he was free to leave, he was read his *Miranda* rights, and that the police believed he was not free to leave. (Pet. at 10 (citing *Florida v. Royer*, 460 U.S. 491, 496, 103 S.Ct. 1319, 1323 (1983)). Contrary to his claims, *Royer* does not provide that a defendant who voluntarily arrives at a police station and is asked to accompany officers to an interrogation room is under arrest. In *Royer*, detective approached the petitioner in an airport, told him that he suspected of narcotics smuggling, and asked him to accompany them to a small windowless room away from the terminal. 460 U.S. at 491. They also confiscated the defendant's airline ticket and retrieved his luggage without his consent. *Id.* at 494. Jennings fails to recognize the distinction between his voluntary arrival at the police station, and the forced interrogation by undercover detectives in *Royer*.

A person is not unreasonably seized when he tells police that he is willing to accompany and speak with them because, under such circumstances, a reasonable person would believe he may leave. *People v. Eddmonds*, 101 Ill.2d 44, 61, 461 N.E.2d 347, 355 (Ill. 1984); *see U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877 (1980) (holding that only when restraint

"by means of physical force or a show of authority . . . is imposed is there any foundation whatever for invoking constitutional safeguards"). A reasonable person in Petitioner's situation would not believe they were under arrest or that they were not free to leave.

Although the detective testified that once he entered the interview room, which had no window and a closed door, Petitioner was not free to leave, the Illinois appellate court found that there was no "evidence to indicate that a reasonable person, innocent of any crime would have believed that he could not leave." *People v. Jennings*, No. 1-02-3103, slip. op. at 18. The record indicates that *Stone* precludes Federal habeas relief, and that the Illinois appellate court acted reasonably in reaching its conclusion. The court's decision was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor was the decision made "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," as required for us to grant federal habeas relief. 28 U.S.C. § 2254(d).

Petitioner also claims that no independently corroborated facts justified his initial detention. He cites cases in which probable cause is not established when criminal suspects shift suspicion of their guilt by accusing others. (Pet. at 17 (citing *People v. James*, 118 Ill.2d 214, 224, 514 N.E.2d 998, 1002 (1987))). However, Eric Jennings, Petitioner's brother, was not shifting the blame for the murder from himself to Petitioner, he merely admitted that the car did not belong to him. This admission did not clear Eric of a murder charge, or remove suspicion of involvement. Rather, it led the police to investigate the matter further, and to realize that they needed to talk to Petitioner about the location of his car.

The Illinois appellate court reviewed *de novo* the legal determination of probable cause. *People v. Jennings*, No. 1-02-3103, slip. op. at 16. It determined that the police established

probable cause ten minutes into their conversation with Petitioner. *Id.* at 18. Suspicions originally arose when Eric told detectives that his brother owned the car, but that it was registered in his name because of Petitioner's bad driving record. The police ran a background check on his brother's driving record to verify Eric's statements. This information was corroborated shortly after Petitioner arrived at the police station by his own admission that he in fact owned the car. The appellate court's conclusion that probable cause existed for Petitioner's arrest was reasonable.

        D.       *Suppression of Evidence and Ineffective Counsel*

Petitioner's final claim is that the State violated *Brady* by failing to provide a lab report showing that another person's fingerprints were found on shotgun shell casings found in his car. He alternatively claims that if the report was tendered, but not used in the defense at trial, it constitutes ineffective assistance of counsel.

"To prove a *Brady* violation, a defendant must show: 1) that the evidence was suppressed by the State, either willfully or inadvertently; 2) that the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; and 3) that prejudice ensued." *U.S. v. Price*, 418 F.3d 771, 785 (7th Cir. 2005); *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001). The Assistant State's Attorney testified that she sent every report to defense counsel before trial. *People v. Jennings*, No. 1-02-3103, slip. op. at 22. In making the alternative claim for ineffective counsel, the defense did not argue that they did not receive the report, they argued that if they did not receive the report and then failed to use it, it was ineffective counsel. (Pet. at 20). Defense counsel admitted to knowing before trial that unidentified prints were found at the scene. *People v. Jennings*, No. 1-02-3103, slip. op. at 22. The trial court was satisfied that the defense received the report prior to trial. This a determination of a factual issue made by a State

court that shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). We find that Petitioner has not demonstrated that the prosecution suppressed the evidence. Petitioner also fails to establish the second and third elements under *Price*. Any advantage to the defense is minimal because testimony already supported the State's theory that Petitioner was not alone in the car. Finding fingerprints other than Petitioner's does not strengthen the defense's theory that Petitioner was not at the scene. It merely supports the theory that there were multiple men at the scene. Moreover, the record did not indicate, as defense counsel claimed, that the prints were found on shotgun shells at the scene. Rather, the police report from September 25, 1999 stated that unidentified fingerprints came from the vehicle. *People v. Jennings*, No. 1-02-3103, slip. op. at 22. We are not persuaded that the evidence was material, or that failing to present it was prejudicial to Petitioner.

Alternatively, Petitioner claims that if the defense received this report and did not use it, such conduct constitutes ineffective assistance. In order for this court to grant relief based on ineffective counsel, a petitioner must show that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 688, 696, 104 S.Ct. 2052, 2069 (1984). The Supreme Court in *Strickland* observed that a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Id.* at 697. The court further explained that the purpose is not to grade counsel's performance. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

To demonstrate sufficient prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Id.* at 649. There is not a reasonable probability that the evidence of unidentified fingerprints would have bolstered Jennings's claim because it does not contradict the State's theory of the events. The evidence also does not support Petitioner's theory that he was not at the scene of the crime. We hold that Petitioner did not demonstrate any prejudice by defense counsel's failure to present this report, thus his assistance cannot be considered ineffective.

CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: July 5, 2006